oral argument not to receive 15 minutes per side. Maris Liss for the petitioner. May it please the court, my name is Maris Liss. I would like to reserve three minutes for rebuttal. Thank you for granting oral argument and allowing it to go forward. I just wanted to make sure, did you receive the 28-J letter I filed two days ago? Yes, I would say that we did. Okay, thank you. This is a very tiny case compared to many immigration appeals that I normally take, because I'm only appealing the denial of the motion to reconsider. I am confident that if the court does remand the case, then the board will allow the I-130, because of the approved I-130, I think that the board will allow the case to be remanded to the immigration judge for adjustment of status. The seemingly insurmountable obstacle has been getting the board to reopen the case so that we could get the adjustment of status in front of application before the judge. My argument has four points. First, I just want to note a typographical error that I made on page 14 of my reply. I mistakenly said the I-130 was approved by the asylum office, but it should be the United States Citizenship and Immigration Service. Second, I want to explain why my appeal is so narrow. Third, I will highlight the two leading reasons why I think that the court should grant the petition for review. Of course, everything is in my briefs, but I just want to highlight those two things. And fourth, I will tell you the shocking reason it took so long for Mr. Sinead Zook's I-130 to get approved. The I-130 is the marriage petition. Now, you're supposed to, on these motions to reconsider, only argue that the immigration judge or the BIA erred as a matter of law and not present any new evidence. Is that right? Yes, but I presented new evidence hoping that, sui sponte, the board would be persuaded to reopen the case. Okay, so if we don't consider the new evidence, one issue, of course, is whether we can consider any additional evidence, but if we don't consider any new evidence you might have submitted in connection with this motion, you wouldn't have a very good position here, would you? Well, I think that I can have a good decision for two reasons. First of all, there was a legal error in the board's decision, which I pointed out, which is that they took into account the adverse credibility finding, which was part of the government's opposition to my motion to reopen. You mean the BIA's? Yeah, the BIA's, yeah. And I'll tell you why that is a big mistake. Under the jurisdiction, well, as the Third Circuit pointed out in Guo, an adverse credibility finding is not a bar to other applications of relief. And the Third Circuit, in a footnote, explains that when a person gets a frivolous finding, there's a statute that actually says that a frivolous finding, meaning that the person made a material misrepresentation in their application, that that's a total bar to other relief. But other denials, such as based on adverse credibility, is therefore not a bar. And it's particularly important, something that Guo didn't even note, is that after the Real ID Act, there were jurisdiction stripping provisions, which said that if an immigration judge and the BIA find that there was insufficient corroborating evidence, then that decision is insulated from federal review. So the adverse credibility decisions are now insulated from federal review if there was a finding of insufficient corroborating evidence. So if the board is relying in part about whether they should exercise discretion on something that was unreviewable, that an alien can never get reviewed, then it lacks fairness. Before the Real ID Act, at least you can get such a determination reviewed by a federal court, which is why I didn't appeal the original decision to this court. It would have been a waste of time since the immigration judge found insufficient corroborating evidence, and then the board affirmed that. I believe that you could never have overturned the decision because of that adverse credibility finding. But a second reason, which is actually why I think you can consider the new evidence, is because apart from the fact that I added additional evidence with the motion to reconsider, like sort of seeking a sponte reopening, I also asked for administrative closure. And there have been developments in the law on administrative closure. First of all, under Garza, which is actually a Sixth Circuit case that I litigated years ago, the court decided that it has jurisdiction to review for abuse of discretion a denial of administrative closure. So I believe you have discretion to look at that. Here, though, the BIA acknowledged and took into consideration the evidence submitted by the petitioner and also took into consideration the opposition of the Department of Homeland Security. And apparently there was substantial evidence. Well, there wasn't substantial evidence for your client to prevail. Which decision are you referring to? The decision that was reviewed by the BIA. The May decision or the September decision? Well, we've got to—what decision—what's the decision that's before us? The September decision. Okay, and that was the appeal of the motion to reconsider, is that right? Yes, yes. Okay, well, initially we go back to the first decision where there was supposedly an evidence-based decision, then your motion to reconsider, and, again, issues. Why should—what's the basis to consider this new evidence that you submitted? Well— I know you've got your sua sponte. Yeah, well, the basis is because it also supports the motion for administrative closure, and you have jurisdiction to review denials of motions for administrative closure. In other words, I made a motion to reconsider and a motion to reopen sua sponte and a third motion for administrative closure. Administrative closure is governed by a precedent decision called matter of a vetsian, and that—before matter of a vetsian, the board or an immigration judge could deny administrative closure solely on the basis of government opposition. And so the government could, you know, could oppose and not even say why that they were opposing or have a flimsy reason to oppose. And, like, literally took away jurisdiction from the immigration judge and board to really objectively and independently decide the motion just because the adversary said, I oppose. But then matter of a vetsian came in and said, you can—the board or the immigration judge can consider the government opposition but must also consider five other factors regarding whether a case should be administratively closed. And I submit that you can consider that, you know, the new evidence as making it an even more compelling— that the board could have taken for—to close the case until the I-130 was approved. And, you know, the shocking reason why it took so long for the I-130 to be approved is that we— So this administrative closure, you want the case to be— can proceed with the visa, is that what that's all about? That was—yeah, that was what it was all about. So your client has lost the case but he still has a visa request pending and you're thinking that if we stop these proceedings, which is what you mean by administrative closure, he might be able to stay here for some period of time notwithstanding having lost the case because he's hoping or expecting to get a favorable visa decision. Is that what you're arguing? Yes, but I have great news. The visa petition was approved. So now he only needs to have the second step. The way that it works is that there's a two-step process. One step is that the USCIS, the Immigration Service, verifies the relationship between the petitioner and the beneficiary. So they verify that a husband and wife have a real marriage or that a parent is a real parent of the children, the claimed children. After that, the next step is to apply for the green card. The judge doesn't decide if it's a real marriage or if the children are really the parents and whatnot. That's the administrative agency. Okay, but what would be the basis for permitting administrative closure so your client can proceed with his visa process when he's actually lost the underlying case? Okay, well, I had asked for administrative closure, but I'll tell you a secret. Now that the visa has actually been approved, if the board administratively closes the case, then we just go straight to the agency and get our interview, and he gets his green card. Another thing that the board could do is they could send it to the immigration judge. The immigration judge could administratively close the case, and my client can go and get his green card in front of me, or the immigration judge himself can give the green card. So there's three different options. Okay, but let me ask you this. Does our court have jurisdiction to order that the case be closed? Is that even something that we have the power to do? You don't have power to order them to administratively close the case. You have the power to say that they abused their discretion in denying administrative closure because they didn't consider all the factors under VETCN, and that the board should now consider those factors. Okay. I know you're over your time, but what did they do improperly in closing the case? You mean just the ruling itself, the fact that your client lost? I don't want to put words in your mouth, but just understand your position. What I'm saying is that because of the compelling humanitarian circumstances and the strong evidence of the realness, the bona fides of the marriage, that the board should have either reopened the case or administratively closed the case. And they could have even considered the new evidence in connection with administrative closure, and that would have allowed my client in order to get his green card in front of the agency. Or now that the I-130 is actually approved, the board probably would just send the case back to the immigration judge and let it get sorted out below. I probably don't need them to administratively close it at this point, but they could. Either they could do it or they could send it to the judge for the judge to consider doing it or handling the adjustment himself. Okay. I think we have your position. You'll get your rebuttal time. Thank you so much. Thank you. May it please the court, Claire Workman for the Attorney General, the respondent in this case. Petitioner has appeared before the board several times, but this court only reviews the denial of his motion to reconsider, as he acknowledged today. He fails to show that the board abused its discretion in determining that he had not identified a factual or legal error in its decision denying his motion to reopen because he had provided insufficient evidence that his most recent marriage was bona fide. Petitioner had sought reopening to apply for adjustment of status based on having married his second United States citizen wife two years after the immigration judge found him not credible in his removal proceedings. With his motion to reconsider, petitioner impermissibly sought to introduce additional evidence and also restated the arguments that the board had considered and rejected with his motion to reopen. To the extent that petitioner's most recent motion As a matter of fact, it looks like this marriage is pretty solid. Well, your honor, the I-130 immigrant visa petition has been approved. It was approved after the government filed our answering brief in this case. It's prima facie evidence that the marriage is bona fide, but that wasn't available to the board at the time when it was determining the motion to reopen. Therefore, it had to apply the Velarde-Pacheco factors. And it did not make any legal error in the discretionary weighing of those factors. If you win, what happens? Both of them have to go back to the Ukraine? Is that what happens? Well, his United States citizen wife is, of course, entitled to remain in this country. She could accompany him to Ukraine. But yes, he would go back to Ukraine. He could adjust his status through consular processing. In petitioner's reply brief, he acknowledges that there is a ten-year bar to readmission for aliens who have had a year or more of illegal presence in this country. But he fails to acknowledge that there is a waiver for that bar if you can show extreme hardship to your United States citizen spouse. And there's also another ten-year... Who decides that? I believe that is decided by USCIS. But I'm not completely sure about that, Your Honor. And there's another ten-year bar for aliens who have been ordered removed. But there's also an exception to that if he applies to... He's working now? I believe so, Your Honor. I'm not entirely sure. Well, it's a pretty sympathetic case, don't you think? In some respects, Your Honor, but not in all respects because he was found not credible in his original case. And also, he originally stated that he would bring three corroborating witnesses, and then he never brought those witnesses. And then, while he was in immigration proceedings, in fact, he had married his first United States citizen wife before he was put in proceedings. And she filed an immigrant visa petition for him, but she never appeared at the interview. And so he was not able to adjust his status. It was never explained. Well, I'm talking about, though, this second marriage. It looks pretty strong. Well, Your Honor, that... I don't know quite why what you would say about it that would indicate that it's not valid or genuine. Your Honor, I'm not weighing in on the bona fide nature of his marriage. And the board didn't actually either. The board, in its motion to reopen, was only deciding whether he had provided clear and convincing evidence of a strong likelihood that his marriage was bona fide. It's a high standard. And then, of course, weighing the other factors, including that the Department of Homeland Security opposed it, and for specific reasons, not just because it opposed it outright. And then... What is it about that second marriage that looks like it's not genuine? Well, it was the evidence... I mean, I know that his first one is said not to be genuine, and that may very well be the case. But what about... I don't quite get what the adverse facts are on the second marriage. Well, the evidence that he submitted with his motion to reopen was not sufficient enough to establish the bona fide marriage. The regulation that's applicable lists several categories of the kinds of evidence that someone should submit if they want to show a bona fide marriage. It's also available on USCIS's website. And one of those... Now, of course, not every alien can show all of those criteria, but one of them is to have affidavits of people who know that the marriage is bona fide. And he did not do that with his motion to reopen. That was something that he later submitted. No affidavit? No, Your Honor. He submitted them later with his motion to reconsider. He submitted them later with his motion to reconsider. But, of course, that evidence... The board could not consider new evidence on reconsideration. And so the board's... Is there a rule of law that they can't consider these affidavits on reconsideration? The courts don't have any such rule. On reconsideration, if something is filed before a court, you may or may not think it has some validity, but you can consider it. What is the reason why you just can't even... You've got to close your eyes and say, no, I'm not going to even look at it. Well, three reasons, Your Honor. First, there's the statute that specifies what someone should do in a motion to reconsider, and that is only alleging errors of law or fact in the prior decision. And the regulation that's applicable reiterates the same point. And then this court has also recognized... But this is a question of fact. I'm sorry? Isn't this a question of fact, validity of genuineness of the marriage?  That wasn't a question before the board because it was only determining whether the evidence was sufficient, whether it was clear and convincing. And the petitioner pretty much admitted in his motion to reconsider that his evidence wasn't sufficient because he said that he didn't understand all the kinds of evidence that he needed. And then, of course, with his motion to reconsider, he tried to submit an overwhelming amount of evidence, but that could not be considered because, as this court has recognized, aliens who get married while they're in removal proceedings or afterward, they have one opportunity to apply for adjustment of status, and in this case, when they have a final order of removal to move to reopen, and they have to show clear and convincing evidence of a bona fide marriage. And this is in part because there is essentially a presumption of fraud when someone gets married while they're in... Yeah, but at least he's overcome that, hasn't he? I mean, the presumption of fraud. It looks like this marriage is pretty solid. There is no indication of fraud here remaining, is there? Well, not that I'm aware of, Your Honor, but that wasn't available to the board at the time it was making its decision. What I don't understand is why the evidence can't be considered. If there's a presumption of fraud, he should be able, shouldn't he, to rebut it? Absolutely, Your Honor. With one motion to reopen, he has to get all of his evidence as much as he can possibly gather and put it in that one first motion to reopen because otherwise he just has, as he filed here, a second untimely number barred motion to reopen that the board could only reopen sua sponte, and its decision not to reopen sua sponte, of course, is not reviewable by this court. Is it reviewable by the Board of Immigration, the BIA? The decision of whether or not to reopen sua sponte? If in a motion to reopen, the board denies sua sponte reopening and then the petitioner can file a motion to reconsider that decision, but he only gets one motion to reconsider, so he used up his motion to reconsider here already, Your Honor. And that's an agency rule? Yes, it's a regulation, Your Honor. It's a regulation. All right. And in denying reconsideration, the board explicitly stated that it had considered petitioner's arguments in his motion to reopen and the accompanying reply, and he merely reiterated these arguments in his motion to reconsider without establishing any error in the prior decision. In the materials, the second 28J letter and other materials that were filed around 1130 on Wednesday evening, he again repeats his contention that the board did not consider all of his arguments and might not have received his reply, and he submits unpublished board decisions that were reissued because of clerical or postal errors and makes an assumption that a clerical error was, in his words, probable because of the volume of the board correspondence. This court should disregard this argument because it wasn't exhausted and these decisions are not part of the administrative record. And in any event, this argument ignores the fact that the reply was date-stamped and included in the administrative record and the board, in denying reconsideration, explicitly stated that it had considered the arguments in the reply. And the petitioner's reliance on the unpublished Lynn case doesn't help him because that case involved reopening, not reconsideration, and it also quoted the Zane case, which we cite in our brief, that the board only has to give a rational explanation. It need not mention, and I'm quoting, every piece of evidence before it or every logical element of a motion. What should we do if we've looked at the evidence here that's now in the record and think that pretty clearly this marriage is valid? What should we do? Well, Your Honor, you still have to deny the petition for review in part and dismiss it in remaining part for lack of jurisdiction, and he then has the opportunity to process his adjustment of status abroad. And he... You mean once he gets back to the Ukraine? Yes, Your Honor. Nothing he can do short of going back to the Ukraine. Well, Your Honor, there's one possibility, and that is if petitioner approaches DHS and asks if they will join in a motion to reopen to allow him to attempt to adjust status, because if DHS agrees to join in a motion to reopen, the time and numerical limits don't apply. Now, of course, the board still... Would it make any difference if we agree with you but put in the opinion that we think he should be permitted to do just what you think is what you mentioned here? Oh, well... Would it do any good if we advised the administrative group that they ought to take a close look at this because it's a very sympathetic case? Well, Your Honor, DHS has sole discretion over that decision, and... You mean they don't listen to anybody that's looked at the case and they just... They don't care what three judges think? Let us assume that we thought that. They don't care? No, no, Your Honor. I'm sure that they would take your views and considerations into account, but ultimately they can have their own reasons for not wanting to agree, Your Honor. Let me just ask you, what is our standard of review to decide this appeal that's before us? We... Is it that... Our standard of review is abuse of discretion, whether the BIA's denial of a motion to reconsider involved an abuse of discretion, and that's the basis upon which we're to decide this? Is that the correct standard for us here or not? Yes, Your Honor. The correct standard is whether the board abused its discretion in denying the motion to reconsider, just the motion to reconsider. And we have to do that based on the evidence that was before the board when it made its decision, or can we... Well, I guess I'll stop my question there. My time is up, but would you like me to answer the question, Your Honor? Yes, please. Okay. Yes, you can only decide... Review the evidence that the board had before it on the motion to reopen. And the question in the abuse of discretion standard is whether the board abused its discretion in determining that there was no legal or factual error in its prior decision denying reopening. So you only look at the decision denying reopening for that limited purpose, Your Honor. All right. Thank you. Thank you. I have to run through my points very quickly. One thing that the government said was that there is one other thing they could do. They could seek a joint motion to reopen for the purpose of adjustment of status. I have already done that. The government opposes it. And not only did I seek prosecutorial discretion from the local Detroit Immigration Council, but I actually put in a request to the principal legal advisor in Washington, D.C., which I only do, like, once or twice a year because I don't want my good credit to run out there, because I thought that this was, like, my most sympathetic case of the year. And they also said no. And they particularly said it was because of the adverse credibility determination. But if, when I sit down, this court strongly recommends that the government come to mediation with me and with the Sixth Circuit Court mediator, I would be totally open to that. Then the government said that, you know, we did not present strong enough evidence initially and that, you know, afterwards we submitted affidavits and we could have done that beforehand. And I just want to comment about that. The funny things about affidavits is that when you don't have affidavits, then, you know, judges or government say, oh, they didn't have any affidavits. But when you do bring affidavits, they often curry little weight. They say, well, of course their mother, their brother, their sister, their, you know, sister-in-law said some nice things about them. So, I mean, not to say that we shouldn't have given affidavits at the beginning, but I don't think that, you know, I don't think that that was really a valid comment. Well, she said, though, that your client promised three affidavits and then did not supply them. No, she said that we promised three witnesses at the trial and that the witnesses didn't come to the trial. And that was what the basis, that was part of the basis of the adverse credibility. And there were more than three affidavits, and that was later on. So, and, you know, people don't have control over, like, you know, witnesses, so, you know, that just happened. But you deny us the right to review to see if someone in the administrative proceedings had made a mistake. I'm sorry. I'm sorry, can you repeat that? Yes, I'm saying you said there were these friendly, you know, from the parish priest and the good neighbor and get all these lovey-dovey affidavits don't do any good. And while you may think that, by not submitting them at all, you give us nothing to review. To say that someone did, in fact, abuse their discretion. Was that not your point? They say you don't have any affidavits. I think I heard you say when you bring them, they say, oh, they're from Uncle Charlie or somebody like that. Oh, it wasn't that we consciously said we're not going to do affidavits because nobody cares about them. It was more like we had 17 pieces of evidence that we considered were extremely strong, and we thought that they really stood on its own. And maybe it's because when you're sitting in an office with your clients and you see how real their marriage is, how affectionate they are, you're like, oh, of course it's a real marriage. I'm like, look, I have 17 things. And then do I go for 25 things? But we felt it was a very, very strong and compelling packet. All right. I see that you're out of time. Is it okay if I mention one other thing about processing abroad? If you could do it in more than two sentences. Very fast. A person can apply for a waiver, but it takes a long time. It costs a lot of money. My clients run out of money. And also you have to meet a very high burden on hardship, which you get lots of cases where there's hardship. Hardship is always a problem to prove. And the State Department decisions are unreviewable. Thank you. Thank you very much. Case is submitted.